1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   UNITED STATES OF AMERICA, ex
    rel. JOSE G. CERVANTES, et al.,          NO:  CV-10-3034-RMP

8
                        Relators,           ORDER GRANTING DEFENDANTS'
9       and                                 MOTION TO DISMISS

10  JOSE G. CERVANTES, et al.,

11                      Plaintiffs,

12      v.

13  DEERE & CO., et al.,

14                      Defendants.

15

16      This matter comes before the Court on a motion to dismiss, ECF No. 16, by

17  Defendants Deere & Company ("Deere") and its affiliates Deere Credit Inc.

    ("Deere Credit"), John Deere Capital Corporation ("Deere Capital"), and John

18
    Deere Financial, f.s.b., f/k/a FPC Financial, f.s.b. ("JDF") (collectively,

19
    "Defendants").  The Court has reviewed the Defendants' motion, ECF No. 16, and

20
    supporting memorandum, ECF No. 17, and exhibits, ECF No. 19, the response by

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 1

Plaintiffs Jose Cervantes, Cervantes Packing and Storage LLC, and Cervantes

Orchard & Vineyards (collectively, "Plaintiffs") and heard oral argument from the

parties in Yakima, Washington, on August 25, 2011.

BACKGROUND

Defendant Deere Capital participated in the federal government's

Temporary Liquidity Guaranty Program ("TLG Program") in December 2008.

The TLG Program was initiated by the Federal Deposit Insurance Corporation

(FDIC) and "aimed at strengthening confidence in the banking system by

guaranteeing newly issued senior unsecured debt of banks, thrifts, and certain

holding companies, and providing full coverage of non-interest-bearing deposit

transactions accounts."  "Letter from the Director," 5 FDIC SUPERVISORY INSIGHTS

2, 2 (Winter 2008), http://www.fdic.gov/regulations /examinations/supervisory/

insights/siwin08/si_win08.pdf (visited Nov. 1, 2011).

Under the TLG Program, all eligible institutions were enrolled automatically

and would remain enrolled unless they affirmatively opted out by December 5,

2008, at which point institutions remaining in the program would be assessed fees

for continued coverage.  73 Fed. Reg. 72244-01, 72244 (Nov. 26, 2008).  Although

participation in the Program was automatic, the FDIC could determine "in its

discretion, after consultation with the participating entity's appropriate Federal

banking agency, . . . that the participating entity should no longer be permitted to

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 2

1    continue to participate in the [TLG Program] . . . ." 12 CFR §370.11(a). The

2    FDIC's Final rule provides that termination of participation has "solely . . .

3    prospective effect." 12 CFR § 370.11 (a)(1).

4        Deere Capital was enrolled automatically in the TLG Program, did not opt

5    out of the Program by December 5, 2008, and issued $2 billion in FDIC-

6    guaranteed debt in December 2008. In Deere's 2009 annual report to the

7    Securities and Exchange Commission, Form 10-K, Deere disclosed that following

8    the guaranty of the initial debt in December 2008, the FDIC "notified [Deere

9    Capital] that it needed additional review and written determination from the FDIC

10   before issuing additional guaranteed debt." ECF No. 17-3 at 5. The FDIC

11   declined to make a guaranty for any further debt offerings from Deere Credit on

12   the ground that Deere Credit was not eligible to participate in the TLG Program.

13       Jose Cervantes, Cervantes Packing and Storage LLC, and Cervantes

14   Orchards & Vineyards LLC ("Cervantes Orchards") (collectively, "Plaintiffs")

15   defaulted on loans from Deere Credit for farm machinery that Plaintiffs had

16   purchased. Mr. Cervantes filed for bankruptcy relief[1] and Cervantes Orchards

17   twice filed for bankruptcy relief.[2] In the course of pursuing the second bankruptcy

18   _____

19   [1] *In re Jose and Cynthia Cervantes*, Case No. 11-00258-JAR11 (Bankr. E.D.
     Wash.).

20   [2] *In re Cervantes Orchards & Vineyards LLC*, Case No. 05-06600 and Case No.
     10-00787-JAR11 (Bankr. E.D. Wash.).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 3

claim for Cervantes Orchards, Plaintiffs filed a *qui tam* action and a complaint for declaratory relief and for lender liability against John Deere sales and financing-related entities on June 17, 2010.  Plaintiffs bring six claims under the False Claims Act, 31 U.S.C. §§ 3729-3733, as relators for the United States, and one claim on behalf themselves for breach of contract.  ECF No. 1.

Plaintiffs allege in their complaint the following with respect to fraudulent action by Defendants:

> 1)    The TLGP requirements rendered the holding companies of grandfathered unitary thrifts not eligible for the TLGP, and even if eligible, rendered the amount of eligible senior unsecured debt of such holding companies to be equal to zero.

ECF No. 1 at 12 (¶ 41).

> 2)    Despite their lack of eligibility to participate in the TLGP, neither [Deere] nor [Deere Capital] opted out of the TLGP.  The Defendants caused $2 Billion in U.S.A. guaranteed senior unsecured debt to be issued in December 2008 by misrepresenting eligibility for the TLGP. . . . and falsely submitted documentation that they were eligible to issue over $5 Billion of U.S.A. guaranteed TLGP debt.

ECF No. 1 at 12 (¶¶42-43).

> 3)    At the time [Deere] and/or [Deere Capital] falsely claimed eligibility to issue over $5 Billion of U.S.A. guaranteed TLGP debt as a thrift holding company, and did issue $2 Billion of U.S.A. guaranteed TLGP debt as a thrift holding company, the total assets of [JDC] were less than $1.7 Billion, and it held less than $7 Million in non-[Deere] deposits, all of which non-[Deere] deposits were fully insured by the FDIC, without regard to the TLGP.

ECF No. 1 at 12-13 (¶ 44).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 4

4)    Because the *bona fide* deposits at [JDC] were only approximately $7 million, and further because its overall footings were less than $1.7 million, the Defendants knew before the issuance of $2 Billion of U.S.A. Guaranteed debt in December 2008, that a material part of the proceeds of the offering of senior unsecured debt would be used for the commercial purposes of [Deere] and not for maintaining liquidity of a *bona fide* financial institution or financial institution holding company.  Therefore, the Defendants had actual knowledge they had submitted a false claim to the United States of America, and they knowingly took and retained the benefit thereof.

ECF No. 1 at 13 (¶45).

5)    Despite the representations of [Deere] and/or its affiliates to the FDIC that it qualified for the TLGP, [Deere] took no steps to comply with, or act consistent with, the TLGP purposes as announced in the Joint Statement, Exhibit 4, and elsewhere.  Plaintiff discovered the Defendants' complete failure to comply with the TLGP purposes, and the knowingly false nature of its representations as a qualified participant in TLGP, in connection with depositions of [Deere Credit] in 2010.  The improper conduct of Defendants in this regard was confirmed by the submission by [Deere Credit] of inaccurate and/or misleadingly incomplete testimony in the form of a declaration of an agent of Defendants, submitted to the United States Bankruptcy Court for the Eastern District of Washington.

ECF No. 1 at 13 (¶53).

The United States declined to intervene in the Action, pursuant to 31 U.S.C. § 3730(b)(4)(B).  ECF No. 12.

Defendants move for dismissal on the basis of lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 5

Plaintiffs concede that the breach of contract claim should be dismissed but contest Defendants' motion for dismissal of the False Claims Act claims.

ANALYSIS

**Standards for Motion to Dismiss—Rule 12(b)(1) and (6)**

*Fed. R. Civ. P. 12(b)(1)*

A motion to dismiss under Fed.R.Civ.P. 12(b)(1) addresses the court's subject matter jurisdiction. Federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989). Limits on federal jurisdiction must be neither disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A plaintiff bears the burden to establish that subject matter jurisdiction is proper. *Kokkonen*, 511 U.S. at 377; *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir.1992).

Upon a motion to dismiss pursuant to Rule 12(b)(1), a party may make a jurisdictional attack that is either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A factual attack occurs when the movant "disputes the truth of the allegations, that by

themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  In a factual challenge, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction.  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989).  When considering a motion to dismiss for lack of subject matter jurisdiction, the court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction, and consideration of material outside pleadings does not convert the motion into one for summary judgment.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

With a factual Rule 12(b)(1) challenge, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000); *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986).  In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit "affidavits or any other evidence properly before the court.  It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

*Fed. R. Civ. P. 12(b)(6)*

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 7

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *Twombl*y, 550 U.S. at 555. In ruling on a motion under Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff and accept all material factual allegations in the complaint, as well as any reasonable inferences drawn therefrom. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

**Public Disclosure Bar to Subject Matter Jurisdiction**

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, "prohibits submitting false or fraudulent claims for payment to the United States, §3729(a), and authorizes qui tam suits, in which private parties bring civil actions in the Government's name." *Schindler Elevator Corporation v. United States ex. rel. Kirk*, 131 S.Ct. 1885, 1892 (2011). However, the FCA's public disclosure bar

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 8

deprives the district court of jurisdiction when a qui tam relator brings a suit based on publicly available information.  31 U.S.C. § 3730(e)(4)(2009). [3]

   To determine whether the jurisdictional bar of § 3730(e)(4) precludes a qui tam action, a court first determines "whether there has been a prior public disclosure of the allegations or transactions underlying the qui tam suit." *A-1 Ambulance Serv., Inc., v. California*, 202 F.3d 1238, 1243 (9th Cir.2000) (internal quotation marks omitted).  Once a public disclosure has occurred, the suit is jurisdictionally barred unless the relator bringing suit is an "original source" of the information disclosed.  *A-1 Ambulance Service, Inc.*, 202 F.3d at 1243.

---

[3] The public disclosure provisions were amended effective July 22, 2010.  Pub. L. 111-203 (Amendment by Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking).  This suit was filed on June 17, 2010.  The amendments to the public disclosure bar statutes do not apply retroactively to suits pending at the time that the amendments took effect.  *Graham County Soil and Water Conservation Dist. V. United States ex rel. Wilson*, 130 S.Ct. 1396, 1401, n. 1 (2010).  Therefore, the Court applies the statute as it existed before the amendments.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 9

A disclosure is a "public disclosure" as contemplated by the statute only if (1) the disclosure "originated in one of the sources enumerated in the statute," and (2) "the content of the disclosure consisted of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere information.' " *A-1 Ambulance Service, Inc.*, 202 F.3d at 1243 (quoting *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir.1996)).  The pre-2010 version of the statute identified three categories of enumerated sources: (1) disclosures occurring "in a criminal, civil, or administrative hearing"; (2) disclosures occurring "in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation"; and (3) disclosures occurring "from the news media." 31 U.S.C. § 3730(e)(4)(A) (2009).

Once it is shown that the information underlying an allegation has been publicly disclosed within the meaning of section 3730(e)(4)(A), a district court is divested of jurisdiction unless the qui tam plaintiff can show that he the "original source" of the disclosures by pleading and demonstrating that he has: (1) "direct and independent knowledge of the information on which the allegations are based"; and (2) voluntarily provided the information to the Government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B) (2009); *see also Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 10

The United States Supreme Court has recently emphasized that the language of the public disclosure bar is to be interpreted broadly. *Schindler Elevator Corporation*, 131 S.Ct. at 1892; *Graham County*, 130 S.Ct. 1396, 1404 (2010).

For their allegations of fraud against Defendants, Plaintiffs rely on numerous documents downloaded from the Internet and attached to Plaintiffs' complaint, *see* ECF No. 1 at 25-101, and the deposition of two Deere Credit employees and the declaration of a third Deere Credit employee, which were referred to in ¶ 53 of the Complaint, ECF No. 1 at 13 (quoted above). It is undisputed that the documents attached to Plaintiffs complaint, which include press releases, financial disclosures, an uncompleted form "Master Agreement" from the TLG Program and other information retrieved from the Internet, had entered the public domain before Plaintiff became aware of them.

As for the depositions of Deere Credit employees Michael Kuehn and James Cogil and the declaration of Deere Credit employee John Brown, these materials were discovered and filed in the course of the 2010 bankruptcy petition by Plaintiff Cervantes Orchards. *See U.S. v. Alcan Elec. and Engineering, Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999) ("Disclosures made in the context of litigation may be publicly disclosed for purposes of § 3730(e)(4)(A), even if they are not the subject of a hearing.") (citing approvingly *United States ex rel. Stinson v. Prudential Ins. Co.*, 944 F.2d 1149, 1157, 1159-60 (3d Cir.1991); *United States ex rel. Barajas v.*

1    *Northrop Corp.*, 5 F.3d 407, 409 (9th Cir.1993)).  Moreover, as Defendants set

2    forth in detail in their memorandum, and as is clear from the Court's examination

3    of the depositions and declaration themselves, the depositions and declaration do

4    not provide information relevant to Plaintiffs' FCA allegations beyond what was

5    available publicly before the filing of the depositions and declaration in the

6    bankruptcy proceeding.  *See* ECF No. 17 at 12-13; ECF Nos. 17-1, 17-2, and 17-4.

7    Therefore, the Court finds that the information underlying Plaintiffs' allegations

8    was publicly disclosed.

9         The Court further finds that Plaintiffs were not the original source of any of

10   the information underlying Plaintiffs' allegations in their complaint.  Plaintiffs did

11   not allege that they "voluntarily provided the information to the Government

12   before filing an action under this section which is based on the information."  31

13   U.S.C. § 3730(e)(4)(B)(2009).  Nor did Plaintiffs allege facts that, if true, would

14   show that Plaintiffs themselves uncovered any information that was not available

15   in earlier public disclosures.  While the conclusions that Plaintiffs reached based

16   on their examination of publicly available information may have been original, any

17   knowledge that Plaintiffs claim regarding allegedly fraudulent transactions is

18   neither direct nor independent of the public disclosures that are attached to

19   Plaintiffs' complaint and provided by Defendants with their motion to dismiss.  *See*

20   *Wang ex. rel. United States*, 975 F.2d at 1417.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 12

1    Consequently, the Court finds that it lacks subject matter jurisdiction

2  because the allegations underlying Plaintiffs' complaint were publicly disclosed

3  before Plaintiffs filed suit as relators for the United States and because none of the

4  Plaintiffs is an original source of the relevant information.  Accordingly, the qui

5  tam action is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

6    In light of the Court's determination that it lacks subject matter jurisdiction

7  over Plaintiffs' FCA claims, warranting dismissal under Fed. R. Civ. P. 12(b)(1),

8  the Court declines to reach the issue of whether Plaintiffs' claims should be

9  dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

10    Accordingly, **IT IS HEREBY ORDERED** that:

11    1.    The caption in this matter shall be amended to correct the spelling of

12  Plaintiff Cervantes Orchard & Vineyards, which was spelled as "Vinyards" in an

13  apparent scrivener's error.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 13

2.      Defendant's Motion to Dismiss, **ECF No. 16**, is **GRANTED**.

Plaintiffs' breach of contract claim is **dismissed** pursuant to the parties' consent,

and Plaintiffs' False Claims Act, 31 U.S.C. §§ 3729-3733, claims are **dismissed**

**with prejudice** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

The District Court Executive is directed to enter this Order and provide

copies to counsel.  The District Court Executive is further directed to enter

judgment for Defendants without costs to any party.

DATED this 3rd day of November, 2011.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 14